### EISWIL CORPORATION v. INDIAN RIVER COUNTY.
No. 73-582.

Circuit Court, Indian River County.

November 7, 1974.

Ronald Sales of Sales & Christiansen, Palm Beach, for the plaintiff.

Richard V. Neill of Neill, Griffin, Jeffries & Lloyd, Fort Pierce, for the defendant.

JAMES E. ALDERMAN, Circuit Judge.

*Declaratory judgment:* Plaintiff, Eiswil Corporation, owner of certain land in Indian River County, presently zoned residential R-1A, single family, sought a change in the zoning to R-2C, multiple family, in order to develop said property as a condominium complex. The rezoning request was initially approved by the Indian River County Zoning Commission, however, it was subsequently denied by the Indian River County Commission. Plaintiff filed suit for declaratory judgment seeking to have the existing zoning ordinance declared unconstitutional. A trial was held before the court on September 17 and 18, 1974.

Plaintiff's property, a part of the south beach area of Indian River County, is vacant and unimproved. It consists of 26.8 acres and is bounded on the west by state road A-1-A, on the north and the south by vacant parcels of real property, and on the east by the waters of the Atlantic Ocean. On the west side of A-1-A, immediately across from the subject property, is Saint Edwards' School, a private high school. Across A-1-A and to the south is The Moorings, a new development consisting primarily of single family residences.

Plaintiff contends that the present zoning of the south beach area is not designed to protect, promote and improve the health, safety, morals or general welfare of the public, but is being used to proscribe development and progress; and that the ordinance as applied to its property is confiscatory. Plaintiff asks the court to enter an

order requiring the county to rezone its property to a zoning classification that would allow multiple family development at a density of at least twelve units per acre.

*Findings of fact*

Based upon the evidence and testimony in this case, the court makes the following findings of fact —

The area referred to as the south beach is an unincorporated part of Indian River County containing 2,125.92 acres, lying south of the south city limits of Vero Beach, east of the Indian River, north of the south boundary of Indian River County and west of the Atlantic Ocean. 1,034.91 acres are presently subdivided or otherwise developed. 685 acres classified as conservation and preservation areas, plus an additional 104.26 acres, are undevelopable. There remains 302.50 acres available for future development. Plaintiff's property is a part of this 302.50 acres.

The development of the south beach area has been slow. There presently exist eleven platted subdivisions containing a total of 375 platted lots available for single family residences, 162 have been improved with houses. Based upon building permit records from June 1969 to June 1974, there appear to have been 103 new single family residences started in the south beach area during this five year period. The great majority of the south beach area is presently zoned for single family residency, however, in the last five years small areas have been rezoned which would allow a total of 122 condominium units.

The plaintiff started negotiations for the purchase of the subject property in the fall of 1972. Originally a six months option to purchase was obtained. The property was then zoned single family residential, but Mr. Lawrence Wilcox, the secretary-treasurer and owner of 50% of the plaintiff corporation's stock, testified that based upon his research, he believed that the property would be rezoned to allow a condominium development. His conclusion was based upon his independent research; he was given no assurances or guarantees by the governing body of Indian River County. The plaintiff elected to exercise its option and received title to the property on February 27, 1973. The purchase price was $1,080,000. Plaintiff purchased the property anticipating that it would be rezoned to allow condominium development, but knowing that there was a risk involved and that its request for rezoning might be denied. Simultaneous with the purchase of the property, plaintiff filed its application for rezoning. After a public hearing on September 6, 1973, the Indian River County Zoning Commission, by a 3 to 1 vote, recommended approval of the application for rezoning. On September 19, 1973, the application was considered

by the county commission of Indian River County. The commission, after a public hearing, unanimously denied plaintiff's application for rezoning.

Plaintiff's witness, John Sherman, Jr., a real estate appraiser, testified that the value of the subject property in September of 1973, was $1,072,000. The value of the property one year later at the time of the trial remained $1,072,000. This is substantially what the plaintiff paid for the property when it was purchased. This value is based upon the zoning classification of the property remaining single family residential. Mr. Sherman testified that the highest and best economic use of the property would be for multi-family residential, and that the true value of the property would be $2,728,500, if the zoning classification were changed to allow multi-family residences with a density of up to twelve units per acre. The court accepts as a fact that there would be a considerable increase in the value of the subject property if it were rezoned.

At the public hearings before the zoning commission and the county commission there was substantial public participation. The greater weight of public sentiment appeared to be against the proposed rezoning, but there was a very respectable, vocal and articulate minority which very competently presented the arguments in favor of rezoning. Almost all of the information presented at the trial of this case was available to and was considered by the zoning commission and county commission when they voted upon plaintiff's requested rezoning.

From the minutes of the county commission meeting of September 19, 1973, and the testimony of the chairman of the county commission, it appears that the commission's denial of plaintiff's request for rezoning was based on the following considerations — the proposed change was contrary to established land use of the south beach area; the rezoning would alter the population density pattern which had been established for the south beach area; the rezoning would create excessive traffic congestion on A-1-A highway which presently is the only north-south road through the south beach area; that A-1-A highway is in a state of disrepair and does not have the present capacity to handle additional automobile traffic; that the prospects of improving A-1-A highway in the future are uncertain; that there is presently only one bridge from the mainland which is already inadequate to handle the existing traffic; that although a second bridge is in the planning stage there is no immediate prospect of relief and there exists reason to believe that there could be a long delay in obtaining this facility; that there presently exists only one fire station on the entire island, which would be inadequate to deal with any serious fire or series of fires

on the island, that any back up fire equipment would have to come from the mainland across the one existing bridge; that the rezoning would place an additional burden on the county's schools, law enforcement agencies, the local hospital, and water and electrical services; that the rezoning might adversely affect property values of the single family homeowner in the south beach area; that the allowance of this rezoning would have a "domino effect" which would inevitably lead to the rezoning of other parts of the south beach area for multi-family residences thereby changing the existing character of the area; and finally, a belief by the commissioners that a majority of the people they represented were opposed to the rezoning and wanted to preserve the south beach as an area primarily of single family residences.

### Principles of law

Florida courts have consistently applied certain basic principles of law in zoning cases. The principles which are applicable to the facts of this case are stated below.

The constitutional validity of a zoning ordinance depends upon its relationship to public health, safety, morals and welfare. If a zoning ordinance has a substantial relationship to any one of these objectives, it may be constitutionally valid, that is, within the police powers of the legislative body. A zoning ordinance, however, cannot be confiscatory. By this is meant that the ordinance cannot deprive an owner of the beneficial use of his property by precluding all uses to which the property might reasonably be put or the only use to which it is reasonably adaptable.

It is not necessary to the constitutional validity of an ordinance that it permit the highest and best use of a particular piece of property. A zoning ordinance is not invalid merely because it prevents the owner from using the property in the manner which is economically most advantageous. The mere fact that the land owner is proposing to make a reasonable use of his property and one which is consistent with the public welfare does not permit the conclusion that the existing zoning which precludes the proposed use is constitutionally defective. Zoning regulations may be employed to promote the integrity of a neighborhood and preserve its residential character. Zoning may also be used to protect the economic value of existing uses and to avoid serious traffic congestion.

A zoning ordinance is presumed to be valid and the burden of proof of demonstrating its invalidity is upon the person who attacks the ordinance. Because zoning is a legislative function the discretion of a reviewing court is limited. Where the validity of the ordinance is "fairly debatable", a court may not substitute its judgment for that of the zoning authority.

The legal principles set out above are summarized in the case of County of Brevard v. Woodham, Fla., 223 So.2d 344, 4 DCA (1969).

### First issue

*Is the zoning ordinance in question confiscatory as applied to plaintiff's property?*

Plaintiff argues that the ordinance is confiscatory in that it arbitrarily restrains the value of its property. According to the plaintiff's expert witness, the true value of the property is $2,728,500, however, due to its present zoning classification, its present market value is only $1,072,000.

It is obvious that plaintiff would make more money from its property if it were rezoned. If plaintiff's appraiser is correct, the rezoning alone would increase the present market value of its property by $1,656,500. However, as has been previously stated, a zoning ordinance is not invalid merely because it prevents an owner from using its property in the manner which is economically most advantageous. If the rule were otherwise, no zoning could ever stand. The issue is whether the ordinance deprives an owner of the beneficial use of its property by precluding all uses to which the property might be put or the only use to which it is reasonably adapted.

Plaintiff says it cannot use its property because it cannot economically develop the property for single family residences. The evidence on this point is conflicting. The court resolves the conflict in favor of the defendant and finds that the zoning ordinance under attack is not confiscatory and does not deprive plaintiff of the beneficial use of its property.

### Second issue

*Was the decision not to rezone "fairly debatable" so that the court should not disturb the legislative judgment of the county commission?*

There was in fact considerable debate on the pros and cons of plaintiff's zoning application. Plaintiff contends, however, that the various considerations upon which the county commission based its decision are either not true or are irrelevant and immaterial.

Plaintiff presented testimony tending to show that there would be adequate fire protection, hospital services, police protection, schools, water, electricity, and waste disposal for the people who would live in its proposed development. Plaintiff also presented testimony to the effect that the present A-1-A highway is not being used to capacity and that although the existing bridge over the Indian River is inadequate the state has plans for a new bridge.

Plaintiff's experts were of the opinion that the proposed rezoning would have no adverse effect upon the health, safety, morals or welfare of the county; that plaintiff's property was suitable for medium density development and could be developed without impact on the surrounding area; that plaintiff's property had no utility as presently zoned and denial of the rezoning was unreasonable and not "fairly debatable".

However, as has been pointed out above, just because a land owner is proposing to make a reasonable use of property and one which is consistent with the public welfare, it does not follow that the existing zoning which precludes the proposed use is constitutionally defective. There may be other considerations which make the existing zoning also reasonable and consistent with the public welfare. In matters of zoning there may be more than one "right way". In determining the appropriate zoning for a particular piece of property, the county commission may have several valid alternatives. As long as the alteratives are "fairly debatable" it is within the legislative judgment of the county commission to decide which is the "best way".

At the time plaintiff's petition for rezoning was denied the county commission was considering the adoption of a county wide land use plan. There were three plans under consideration which alternatively provided for low, medium and high densities. As of date of trial, none of the proposed county wide land use plans had been adopted. However, Indian River County did have a county wide zoning ordinance under which most of the south beach area had been zoned single family residential. By enactment of this zoning ordinance the county commission made the legislative decision that the south beach area, at least for the time being, should remain primarily low density, single family residential. Reasonable men in good faith may disagree with this decision but in the court's opinion the question is "fairly debatable".

The remaining question is whether the single family zoning classification is still "fairly debatable" when particularly applied to plaintiff's property. The court believes that it is. Plaintiff's land is no different from contiguous land to the north and the south. If plaintiff, as a matter of law, is entitled to have its property rezoned, would not the same be true of any other landowner in the south beach area? Plaintiff's 26.8 acres is not an island cut off from the rest of the south beach. It cannot be considered in isolation as if it would have no impact on the rest of the community. The various considerations previously referred to, which were considered by the county commissioners in reaching their decision, were all relevant and material. Plaintiff has been able to raise some doubt as to the factual basis of some, but not all. For the court to overrule the

decision of the county commission denying plaintiff's requested rezoning would require the court to substitute its judgment for the legislative judgment of the county commissioners. This is not the court's function.

### Conclusion

The court determines and finds that the zoning ordinance under attack is not confiscatory as applied to plaintiff's property and that the decision not to rezone was "fairly debatable" so that the court should not disturb the legislative judgment of the county commission. Final judgment is entered in favor of the defendant, Indian River County, against the plaintiff, Eiswil Corporation, a Florida corporation, and plaintiff's petition is dismissed.